John Bill Mitchell
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-151-CR

     JOHN BILL MITCHELL,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the County Court at Law No. 3
Brazoria County, Texas
Trial Court # 89,735B
                                                                                                               

O P I N I O N
                                                                                                               

      John Bill Mitchell pleaded guilty to the misdemeanor offense of assault. See Tex. Pen. Code
Ann. § 22.01(a)(1) (Vernon 1994). Pursuant to a plea agreement, the court sentenced him to 365
days’ confinement and a $200 fine, suspended imposition of sentence, and placed him on
community supervision for twenty-four months. The State filed a motion to revoke his community
supervision thirty-six days later. After a hearing, the court revoked his community supervision
and imposed the original sentence. Mitchell appeals claiming by four points of error that the court
abused its discretion in revoking his community supervision when it refused to allow him to
impeach a prosecution witness to show “her motive, bias and prejudice for testifying against
[him].” We will affirm.
BACKGROUND
      Mitchell pleaded guilty to assaulting his wife Becky “by hitting [her] in the head and arm with
a brick.” The court placed him on community supervision as indicated above on July 28, 1997. 
The State filed its motion to revoke on September 2. The motion alleges a single violation,
namely that Mitchell:
on or about the 24th day of AUGUST, 1997, in HARRIS County, Texas, did then and
there intentionally and knowingly and recklessly cause bodily injury to another, namely
FRANCES BOWMAN, to wit: STRIKING THE COMPLAINANT WITH HIS HAND,
this being in violation of term “A” of the Defendant’s conditions of community
supervision.

The parties proceeded to a hearing on the State’s motion on February 2, 1998. The State’s two
primary witnesses were Becky Mitchell and her mother Frances Bowman, the complainant in the
subsequent offense
      The evidence in sum is that Mitchell grabbed his fourteen-year-old step-daughter by the hair
and (in his own words) “grabbed her head and pulled her head up so she could look at [him]
because she was just totally ignoring [him].” Becky did not approve of the manner in which he
was treating her daughter so she intervened. An argument ensued. At Becky’s direction, the
daughter called Bowman. Bowman arrived at the Mitchells’ home shortly thereafter and
immediately confronted Mitchell about his treatment of her granddaughter. They grabbed each
other by the shirt, and during the course of their argument Mitchell hit her in the face.
      Bowman and Becky claim this was unprovoked. Mitchell claims Bowman first hit him in the
head with the heel of her shoe and raised the shoe as if she were about to hit him again. Mitchell
testified that he hit her in self-defense because he believed she would hit him again. Bowman and
Becky claim that Bowman did not hit him with the shoe until after he hit her.



IMPEACHMENT BY CROSS-EXAMINATION
      Mitchell claims in his second point that the court abused its discretion in revoking his
community supervision because the court did not allow him to impeach Becky to show “her
motive, bias and prejudice for testifying against [him].” In his third point, he avers that this denial
amounts to a violation of his Sixth Amendment right to confront the witnesses against him. 
Applicable Law
      We review an order revoking community supervision under an abuse of discretion standard. 
See Cardona v. State, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); Brumbalow v. State, 933
S.W.2d 298, 299 (Tex. App.—Waco 1996, pet. ref’d). We similarly review a court’s evidentiary
rulings under an abuse of discretion standard. Green v. State, 934 S.W.2d 92, 101-02 (Tex.
Crim. App. 1996). We reverse only when the ruling falls outside the “zone of reasonable
disagreement.” Id. at 102 (quoting Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App.
1990) (op. on reh’g)). We will uphold the court’s ruling if correct on any theory of law applicable
to the case, even if the court gave an incorrect reason for the ruling. Jones v. State, 982 S.W.2d
386, 389 (Tex. Crim. App. 1998).
      The Confrontation Clause of the Sixth Amendment affords an accused the right “to be
confronted with the witnesses against him.” U.S. Const. amend. VI. This guarantee applies to
the states via the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403, 85 S. Ct. 1065,
1068, 13 L. Ed. 2d 923 (1965). However, the Confrontation Clause does not prohibit the trial
court from placing reasonable limits on cross-examination of witnesses. Delaware v. Van Arsdall,
475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986).
On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is
concerned to impose reasonable limits on such cross-examination based on concerns
about, among other things, harassment, prejudice, confusion of the issues, the witness’
safety, or interrogation that is repetitive or only marginally relevant.

Id.; accord Carroll v. State, 916 S.W.2d 494, 498 (Tex. Crim. App. 1996).
Pertinent Testimony
      On direct examination by the State, Becky testified that Mitchell and she separated as a result
of the assault on Bowman. She further testified that she had not yet filed for divorce but was
“planning to.”
      During Becky’s cross-examination, she testified that she had filed charges against Mitchell
“in more than one jurisdiction before” and in “several different courts.” She then agreed that she
was “going to get a divorce from [him].” Counsel followed up with additional questions about
a protective order Becky has obtained against Mitchell and the fact that she had called counsel in
the past and “talked to [him] about all the dastardly deeds that [Mitchell] has done in his lifetime
since he’s known [her].”
      The questioning continued thus:
      Counsel:      Well, now you’re going to get a divorce. You didn’t get a divorce during any
of those other times. You didn’t get a protective order during any of those other
times, did you?

      Becky:  No, sir.
 
      Counsel:      So, this is the last straw. Is that it? Now you’re going to get a divorce?
 
      Becky:  Well, like you said, me and Mr. Mitchell went to Lufkin. Mr. Mitchell told me
hisself [sic] that he wants a divorce.
 
Counsel:      Well, do you want that divorce?
 
Becky:        If we can come to that conclusion, yes.
 
Counsel:      You do want a divorce?
 
Becky:        If we can come to that conclusion, yes, I want a divorce.
 
Counsel:      I’m not sure I understand what you mean when you say– 

The court sustained the State’s relevance objection to this question. Counsel argued that evidence
of Becky’s “desire to divorce [Mitchell]” was relevant to show her “ill will toward [him]” and
“her bias and motive to testify against him.” The court responded, “I’ve made my ruling. We’ll
proceed.”
Analysis
      The gist of counsel’s complaint seems to be that Becky’s statement that she wants a divorce
“if [they] can come to that conclusion” is ambiguous. Arguably, the phrase could be interpreted
to mean either that she desires a divorce if the two of them “can come to [the] conclusion” that
such is agreeable and necessary or that she desires a divorce if that “conclusion” is obtainable.
      Becky’s “desire to divorce” Mitchell is no doubt a proper subject of impeachment for each
of the reasons mentioned by counsel (i.e., proof of “ill will,” “bias,” and “motive”). See London
v. State, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987). Before the court sustained the State’s
objection of which Mitchell presently complains however, Becky testified on direct examination
that she planned to divorce Mitchell. And on cross-examination, counsel had already asked her
point-blank whether she was “going to get a divorce from [Mitchell].” She responded, “Yes.” 
In addition, counsel clearly informed the court of “[Mitchell’s] position that she has a desire to
divorce [him].”
      Even assuming the court limited the cross-examination of Becky on the improper basis of
relevance (the basis on which the State objected), we must uphold the ruling if “correct under any
theory of law applicable to the case.” Jones, 982 S.W.2d at 389. From the record, it appears that
the court placed “reasonable limits on [Becky’s] cross-examination based on concerns about . 
. . interrogation that is repetitive.” Van Arsdall, 475 U.S. at 679, 106 S. Ct. at 1435; accord
Carroll, 916 S.W.2d at 498. Accordingly, the court did not violate Mitchell’s rights under the
Confrontation Clause. Id. Because the court’s ruling did not violate Mitchell’s right of
confrontation, no abuse of discretion is shown. See Cardona, 665 S.W.2d at 493; Brumbalow,
933 S.W.2d at 299. Thus, we overrule his second and third points.
IMPEACHMENT BY ANOTHER WITNESS
      Mitchell contends in his fourth point that the court erred by refusing to allow him to testify
about Becky’s desire to divorce him. His fourth point refers to the court’s sustaining of the State’s
relevance objection to counsel’s question posed to Mitchell, “Are you planning to get a divorce? 
Is she planning to get a divorce?”
      The Court of Criminal Appeals has stated:
The motives which operate on the mind of a witness while he testifies should never be
regarded as immaterial or irrelevant. Great latitude should be allowed the accused in
showing any fact which would tend to establish ill feeling, bias, motive, or animus upon
the part of any witness testifying against him.

Steve v. State, 614 S.W.2d 137, 140 (Tex. Crim. App. [Panel Op.] 1981); accord London, 739
S.W.2d at 846. Assuming relevance, the court may exclude such evidence nonetheless “if its
probative value is substantially outweighed . . . by considerations of . . . needless presentation of
cumulative evidence.” Tex. R. Crim. Evid. 403.



      Bowman testified that the Mitchells’ marriage has endured “some severe difficulties.” Becky
testified that she was planning to divorce Mitchell and that she has in the past “filed charges” on
him “in more than one jurisdiction” and in “several different courts.” She testified that Mitchell
was currently on community supervision for assaulting her and that she presently has a protective
order against him. Mitchell testified that they have “been having a lot of problems” in their
marriage.
      The testimony offered throughout the course of the revocation hearing repeatedly referred to
the fact that the Mitchells’ marriage had been characterized by violence and that a divorce was
imminent. Thus, it appears that any further testimony by Mitchell concerning Becky’s desire to
obtain a divorce would be cumulative to other evidence suggesting her “ill will,” “bias,” and
“motive to testify against him.”
      Even assuming the court excluded the evidence on the improper basis of relevance (the basis
on which the State objected), we must uphold the ruling if “correct under any theory of law
applicable to the case.” Jones, 982 S.W.2d at 389. The excluded testimony appears cumulative
to the other testimony admitted without objection in the hearing. See Tex. R. Crim. Evid. 403. 
Thus, we cannot say the court’s exclusion of the testimony lies outside the “zone of reasonable
disagreement.” Green, 934 S.W.2d at 101-02. Accordingly, we overrule Mitchell’s fourth point.
REVOCATION OF COMMUNITY SUPERVISION
      Mitchell argues in his first point that the court abused its discretion in revoking his probation. 
See Cardona, 665 S.W.2d at 493; Brumbalow, 933 S.W.2d at 299. He provides no argument or
discussion to support this claim besides the two rulings addressed in connection with his second,
third and fourth points above. We have already determined that the court did not abuse its
discretion in either instance. Thus, we overrule Mitchell’s first point.
      We affirm the judgment.
 
                                                                               REX D. DAVIS
                                                                               Chief Justice


Before Chief Justice Davis
            Justice Vance and
            Justice Gray
Affirmed
Opinion delivered and filed July 21, 1999
Do not publish