

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NOS. 2-07-141-CR**
**2-07-142-CR**
**2-07-143-CR**

ANDREW MICHAEL CRUMP A/K/A                    APPELLANT
ANDREW M. CRUMP

V.

THE STATE OF TEXAS                    STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Andrew Michael Crump a/k/a Andrew M. Crump of the aggravated robbery with a deadly weapon of Jimmie Stanford, George Paris, and Heidi Autry, and the aggravated robbery of an elderly person—Betsy Tipton. The jury assessed Crump's punishment at sixty-five

---

[1] *See* Tex. R. App. P. 47.4.

years' confinement for each offense, to run concurrently. In a single point, Crump argues that the trial court erred by admitting evidence of an extraneous offense. We will affirm.

Crump visited Troy Vinson Jewelers on June 21, 2006. When a salesperson showed Crump three watches, each valued at approximately $5,000, Crump grabbed the watches from the salesperson and ran towards the store's electronically controlled exit door.[2] Crump collided with the locked door and—realizing that he was locked in and unable to exit—lifted his shirt, pulled a gun from his pants, waved the gun across the showroom, and said something to the effect of, "If you don't let me out, someone's going to die."[3] An employee unlocked the door, and Crump exited the store.[4] He drove away in a small blue truck.

Authorities later located and arrested Crump in Georgia. They also located the truck that Crump drove after robbing the jewelry store in an apartment complex where his mother lives.

---

[2] Store employees can control entry into and exit out of the store with a remote that unlocks the door.

[3] At trial, Crump claimed that the gun he used during the robbery was a toy gun.

[4] Stanford, Paris, Autry, and Tipton were all present at the jewelry store.

At trial, Crump admitted that he had robbed the jewelry store and admitted that he had committed the aggravated robbery of Tipton, but he denied using a deadly weapon during the robbery. After the State rested and during his direct examination, Crump said that the truck he drove after the robbery belonged to an individual named "Zack." He testified:

[Defense counsel]: Where did that truck come from?

[Crump]: It's Zack's truck.

[Defense counsel]: Okay. Is it Zack's truck? Are you sure, or did you think it was Zack's truck?

[Crump]: At that time, I believed it was Zack's truck. Later on, I found out it wasn't Zack's truck.

[Defense counsel]: Had Zack let you use the truck?

[Crump]: Yes. I was staying at his house previously that night so I was coming back to pick him up.

After defense counsel passed Crump for cross-examination, the prosecutor approached the bench and said that she had reason to believe Crump had stolen the truck and that she intended to cross-examine Crump about the stolen truck because he "has now claimed the truck belonged to some guy named Zack." Thereafter, Crump again admitted to committing robbery, but he denied stealing the truck.

After the defense rested, the State, on rebuttal, attempted to elicit testimony from Officer Beth Turnbow of the Weatherford Police Department

3

regarding her investigation of a stolen truck. Defense counsel objected to the evidence as extraneous, but the trial court overruled the objection, stating that it was "contextual of the offense." The officer thereafter testified that the truck had been stolen from a Love's convenience store in or near Weatherford, that video surveillance taken from the convenience store had captured Crump's image the same night that the truck was stolen, and that she identified Crump as a suspect. After authorities located the stolen truck, they discovered that the truck's license plate had been switched with the license plate of a truck owned by an individual who lives in an apartment complex near the Love's convenience store. Crump's sister lives in the same apartment complex.

In his sole point, Crump argues that the trial court erred by admitting the extraneous offense evidence of the stolen truck because the evidence is not same transaction contextual evidence. He also argues that the erroneous admission of the evidence had a direct and substantial impact on the jury's determination of the contested issues in the case. We assume without deciding error in the admission of the evidence and proceed directly to Crump's harm argument. *See Coleman v. State*, 188 S.W.3d 708, 726 (Tex. App.—Tyler 2005, pet. ref'd) (assuming error in the admission of the complained-of evidence and addressing appellant's contention that the error was harmful), *cert. denied*, 549 U.S. 999 (2006).

4

The erroneous admission of extraneous offense evidence is not constitutional error. *Martin v. State*, 176 S.W.3d 887, 897 (Tex. App.—Fort Worth 2005, no pet.). Texas rule of appellate procedure 44.2(b) is therefore applicable. Tex. R. App. P. 44.2(b). Under rule 44.2(b), we are to disregard the error unless it affected Crump's substantial rights. *Id*. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref'd). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive

5

theories, whether the State emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

There is ample evidence of Crump's guilt. The State called numerous witnesses during its case-in-chief who testified about the details surrounding the aggravated robberies, including that Crump grabbed the watches from an employee, ran to the exit door, pulled a gun from his pants, and fanned or waved the gun around the room at the employees and store patrons, causing some of them to feel threatened with imminent bodily injury or death. Crump even admitted during his testimony that he robbed the jewelry store and that he committed the aggravated robbery of Tipton. He only denied using a deadly weapon during the commission of the offenses. In light of the entire record, Crump's alleged untruthfulness concerning how he came into possession of the truck has minimal relevance as to whether he used a deadly weapon during the robberies.

Regarding the character of the assumed error and how it might be considered in connection with other evidence, the State sought to admit the extraneous offense evidence to rebut Crump's alleged false testimony that his friend, Zack, let him use the truck. This was not the only evidence that the State elicited during rebuttal tending to challenge Crump's truthfulness,

6

however; five other witnesses testified during the State's rebuttal that they had a bad opinion of Crump's character for truthfulness.

The trial court also provided a limiting instruction regarding extraneous offenses in the jury charge. *See Martin*, 176 S.W.3d at 898 (considering that trial court included limiting instruction in jury charge as part of harm analysis). Absent evidence to the contrary, the jury is presumed to follow the instruction set forth in the court's charge, and Crump has not rebutted this presumption. *See id*.

We have a fair assurance that the assumed error either did not influence the jury or that it had but a slight effect. Accordingly, we conclude that, in the context of the entire case against Crump, the assumed error in admitting the extraneous offense evidence that Crump stole the truck did not have a substantial or injurious effect on the jury's verdict and did not affect Crump's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard the error. *See* Tex. R. App. P. 44.2(b). We overrule Crump's sole point and affirm the trial court's judgment.

PER CURIAM

PANEL: DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment); GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

7

DELIVERED: February 5, 2009