COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                       NOS.
2-07-141-CR

                                               2-07-142-CR

                                               2-07-143-CR

 

 

ANDREW MICHAEL CRUMP A/K/A                                          APPELLANT

ANDREW M. CRUMP

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








A jury convicted Appellant Andrew Michael Crump
a/k/a Andrew M. Crump of the aggravated robbery with a deadly weapon of Jimmie
Stanford, George Paris, and Heidi Autry, and the aggravated robbery of an
elderly personCBetsy Tipton.  The jury assessed Crump=s
punishment at sixty-five years=
confinement for each offense, to run concurrently.  In a single point, Crump argues that the
trial court erred by admitting evidence of an extraneous offense.  We will affirm.

Crump visited Troy Vinson Jewelers on June 21,
2006.  When a salesperson showed Crump
three watches, each valued at approximately $5,000, Crump grabbed the watches
from the salesperson and ran towards the store=s
electronically controlled exit door.[2]  Crump collided with the locked door andCrealizing
that he was locked in and unable to exitClifted
his shirt, pulled a gun from his pants, waved the gun across the showroom, and
said something to the effect of, AIf you
don=t let me
out, someone=s going to die.@[3]  An employee unlocked the door, and Crump
exited the store.[4]  He drove away in a small blue truck.

Authorities later located and arrested Crump in
Georgia.  They also located the truck
that Crump drove after robbing the jewelry store in an apartment complex where
his mother lives.








At trial, Crump admitted that he had robbed the
jewelry store and admitted that he had committed the aggravated robbery of
Tipton, but he denied using a deadly weapon during the robbery.  After the State rested and during his direct
examination, Crump said that the truck he drove after the robbery belonged to
an individual named AZack.@  He testified:

[Defense counsel]:  Where did that truck come from?

[Crump]: 
It=s Zack=s truck.

[Defense counsel]:  Okay. 
Is it Zack=s truck?  Are you sure, or did you think it was Zack=s truck?

 

[Crump]:  At that time, I believed it was Zack=s truck.  Later on, I found out it wasn=t Zack=s truck.

 

[Defense counsel]:  Had Zack let you use the truck?

[Crump]:  Yes.  I
was staying at his house previously that night so I was coming back to pick him
up.

 

After defense counsel passed Crump for cross-examination, the
prosecutor approached the bench and said that she had reason to believe Crump
had stolen the truck and that she intended to cross-examine Crump about the
stolen truck because he Ahas now claimed the truck
belonged to some guy named Zack.@  Thereafter, Crump again admitted to
committing robbery, but he denied stealing the truck.








After the defense rested, the State, on rebuttal,
attempted to elicit testimony from Officer Beth Turnbow of the Weatherford
Police Department regarding her investigation of a stolen truck.  Defense counsel objected to the evidence as
extraneous, but the trial court overruled the objection, stating that it was Acontextual
of the offense.@ 
The officer thereafter testified that the truck had been stolen from a
Love=s convenience
store in or near Weatherford, that video surveillance taken from the
convenience store had captured Crump=s image
the same night that the truck was stolen, and that she identified Crump as a
suspect.  After authorities located the
stolen truck, they discovered that the truck=s
license plate had been switched with the license plate of a truck owned by an
individual who lives in an apartment complex near the Love=s
convenience store.  Crump=s sister
lives in the same apartment complex.

In his sole point, Crump argues that the trial
court erred by admitting the extraneous offense evidence of the stolen truck
because the evidence is not same transaction contextual evidence.  He also argues that the erroneous admission
of the evidence had a direct and substantial impact on the jury=s
determination of the contested issues in the case.  We assume without deciding error in the
admission of the evidence and proceed directly to Crump=s harm
argument.  See Coleman v. State,
188 S.W.3d 708, 726 (Tex. App.CTyler
2005, pet. ref=d) (assuming error in the
admission of the complained-of evidence and addressing appellant=s
contention that the error was harmful), cert. denied, 549 U.S. 999
(2006).








The erroneous admission of extraneous offense
evidence is not constitutional error.  Martin
v. State, 176 S.W.3d 887, 897 (Tex. App.CFort
Worth 2005, no pet.).  Texas rule of appellate
procedure 44.2(b) is therefore applicable. 
Tex. R. App. P. 44.2(b).  Under
rule 44.2(b), we are to disregard the error unless it affected Crump=s
substantial rights.  Id.  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall v. State,
961 S.W.2d 639, 642B43 (Tex. App.CFort
Worth 1998, pet. ref=d).  Conversely, an error does not affect a
substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon v. State, 49 S.W.3d 356, 365
(Tex. Crim. App. 2001); Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998).








In making this determination, we review the
record as a whole, including any testimony or physical evidence admitted for
the jury=s
consideration, the nature of the evidence supporting the verdict, and the
character of the alleged error and how it might be considered in connection
with other evidence in the case.  Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  We may also consider the jury instructions,
the State=s theory and any defensive
theories, whether the State emphasized the error, closing arguments, and even
voir dire, if applicable.  Id. at
355B56.

There is ample evidence of Crump=s
guilt.  The State called numerous
witnesses during its case-in-chief who testified about the details surrounding
the aggravated robberies, including that Crump grabbed the watches from an
employee, ran to the exit door, pulled a gun from his pants, and fanned or
waved the gun around the room at the employees and store patrons, causing some
of them to feel threatened with imminent bodily injury or death.  Crump even admitted during his testimony that
he robbed the jewelry store and that he committed the aggravated robbery of
Tipton.  He only denied using a deadly
weapon during the commission of the offenses. 
In light of the entire record, Crump=s
alleged untruthfulness concerning how he came into possession of the truck has
minimal relevance as to whether he used a deadly weapon during the robberies.

Regarding the character of the assumed error and
how it might be considered in connection with other evidence, the State sought
to admit the extraneous offense evidence to rebut Crump=s
alleged false testimony that his friend, Zack, let him use the truck.  This was not the only evidence that the State
elicited during rebuttal tending to challenge Crump=s
truthfulness, however; five other witnesses testified during the State=s
rebuttal that they had a bad opinion of Crump=s
character for truthfulness.








The trial court also provided a limiting
instruction regarding extraneous offenses in the jury charge.  See Martin, 176 S.W.3d at 898
(considering that trial court included limiting instruction in jury charge as
part of harm analysis).  Absent evidence
to the contrary, the jury is presumed to follow the instruction set forth in
the court=s charge, and Crump has not
rebutted this presumption.  See id.

We have a fair assurance that the assumed error
either did not influence the jury or that it had but a slight effect.  Accordingly, we conclude that, in the context
of the entire case against Crump, the assumed error in admitting the extraneous
offense evidence that Crump stole the truck did not have a substantial or
injurious effect on the jury=s
verdict and did not affect Crump=s
substantial rights.  See King, 953
S.W.2d at 271.  Thus, we disregard the
error.  See Tex. R. App. P.
44.2(b).  We overrule Crump=s sole
point and affirm the trial court=s
judgment.

PER CURIAM

PANEL: DIXON W. HOLMAN,
J. (Senior Justice, Retired, Sitting by Assignment); GARDNER and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: February 5, 2009











[1]See Tex. R. App. P. 47.4.





[2]Store employees can
control entry into and exit out of the store with a remote that unlocks the
door.





[3]At trial, Crump claimed
that the gun he used during the robbery was a toy gun.





[4]Stanford, Paris, Autry,
and Tipton were all present at the jewelry store.